IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-130

 No. 253A20

 Filed 5 November 2021

 IN THE MATTER OF: A.E., J.V., E.V., A.V.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 27

 February 2020 by Judge Marion M. Boone in District Court, Stokes County. This

 matter was calendared for argument in the Supreme Court on 30 September 2021,

 but was determined on the record and briefs without oral argument pursuant to Rule

 30(f) of the North Carolina Rules of Appellate Procedure.

 Jennifer Oakley Michaud for petitioner-appellee Stokes County Department of
 Social Services.

 James N. Freeman, Jr., for appellee Guardian ad Litem.

 David A. Perez for respondent-appellant mother.

 Mercedes O. Chut for respondent-appellant father.

 ERVIN, Justice.

¶1 Respondent-mother Rosa E. and respondent-father Charles V. appeal from the

 trial court’s orders terminating their parental rights in their minor children J.V.,

 E.V., and A.V.,1 and respondent-mother appeals from the trial court’s order

 1 J.V., E.V., and A.V., respectively, will be referred to throughout the remainder of

 this opinion as “Jake,” “Evette,” and “Alana,” which are pseudonyms used to protect the
 identity of the juveniles and for ease of reading.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 terminating her parental rights in her minor child A.E. 2 After careful consideration

 of respondent-mother’s and respondent-father’s challenges to the trial court’s

 termination orders in light of the record and the applicable law, we conclude that the

 trial court’s termination orders should be affirmed.

 I. Factual Background

¶2 On 20 February 2018, the Stokes County Department of Social Services

 received a report alleging that Ellie, Jake, Evette, and Alana lived in a home that

 was “severe[ly] infest[ed]” with German cockroaches and that Ellie, who was always

 anxious to eat when she was at school, arrived at school wearing dirty and soiled

 clothes. The report was accompanied by videos showing the severity of the cockroach

 infestation that depicted “[a] multitude” of cockroaches in all stages of life crawling

 up and across all of the surfaces in the home, including the walls, floors, ceilings,

 counters, cabinets, and kitchen appliances. In the course of investigating the report,

 the social worker observed that cockroaches were ubiquitous throughout the home

 and noticed a pile of used diapers by the front door, breakfast cereal scattered around

 the home, and food-encrusted dishes in the kitchen area. In addition, the social

 worked observed that two of Alana’s front teeth were decaying and that Evette

 appeared to have an abdominal hernia. On 20 February 2018, DSS filed juvenile

 2 A.E. will be referred to throughout the remainder of this opinion as “Ellie,” which is

 a pseudonym used to protect the juvenile’s identity and for ease of reading. Ellie’s putative
 father is not a party to this appeal.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 petitions alleging that all four children were neglected juveniles who lived in an

 environment that was injurious to their welfare and were exposed to a substantial

 risk of physical injury as the result of conditions created by respondent-mother and

 respondent-father and obtained the entry of orders taking the children into nonsecure

 custody, a step that resulted in the children’s placement in foster care.

¶3 After the filing of the original petitions, DSS obtained additional information

 concerning the children and the conditions in which they lived. Among other things,

 DSS learned that Ellie had to have her clothes changed on a daily basis following her

 arrival at school because of their filthy condition and the smell that emanated from

 them. In addition, the social worker learned that respondent-father allegedly

 “whopped” Ellie with a “wood[en] board” when she failed to listen to educational

 personnel. The family had been the subject of five prior DSS reports, having been

 found in need of services in 2014 in the aftermath of an incident during which Ellie

 had been left alone in a vehicle for about fourteen minutes while wearing a heavily

 soiled diaper at a time when the outside temperature was ninety degrees. According

 to a psychological report, respondent-mother had reduced intellectual functioning

 and an untreated mood disorder, did not have sound judgment, and lacked “a good

 sense” of appropriate child development.

¶4 Although respondent-mother claimed that Alana had been born with rotten

 teeth, subsequently obtained medical records disproved that assertion. An
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 examination of Ellie’s medical records reflected concerns relating to inadequate

 nutrition and a history of asthma. In addition, other medical records revealed that

 both Ellie and Jake had tested positive for the presence of high levels of lead and that

 Ellie exhibited “risk factors for lead toxicity.” Although the available educational

 records indicated that, when she was two, Ellie exhibited delays in fine motor skills,

 she had been identified as being “globally delayed” upon entering kindergarten and

 was receiving special education services on the basis of an Individualized Educational

 Plan. In light of this additional information, DSS filed amended juvenile petitions on

 8 March 2018 for the purpose of adding allegations that the children had not received

 proper care, supervision, or discipline from respondent-mother and respondent-

 father.

¶5 On 23 February 2018, respondent-mother and respondent-father entered into

 case plans in which they agreed to cooperate with an exterminator in connection with

 the elimination of the cockroach infestation, to dispose of trash and other waste

 products in an appropriate manner, to receive information concerning the

 maintenance of appropriate hygiene and to demonstrate a proper understanding of

 that subject by bathing regularly and maintaining a sanitary home, to attend

 parenting classes, to obtain a psychological and parenting evaluation and follow all

 resulting recommendations, and to provide appropriate snacks for and engage in

 appropriate activities with the children during visits. Respondent-mother and
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 respondent-father began work toward satisfying the requirements of their case plans

 immediately.

¶6 In a report that was dated 15 March 2018 and had been prepared for use in

 connection with the initial adjudication and disposition hearing on 22 March 2018,

 DSS noted that respondent-mother and respondent-father had been cooperating with

 the exterminator, had begun a fourteen-week parenting class, and had scheduled

 appointments for the purpose of obtaining a psychological and parenting evaluation.

 DSS noted that, while respondent-mother had displayed adequate parenting skills

 and had provided appropriate snacks during visitations, respondent-father had done

 “very little” during his visits with the children.

¶7 On 22 March 2018, respondent-mother and respondent-father stipulated that,

 at the time that the juvenile petitions had been filed, the children had not been

 receiving proper care, supervision, or discipline. On 11 May 2018, the trial court

 entered an order finding that all of the children were neglected juveniles based upon

 the information to which respondent-mother and respondent-father had stipulated.

 The trial court instructed respondent-mother and respondent-father to continue to

 comply with their case plans, allowed them to visit with the children for two hours

 each week, and established a primary permanent plan for the children of

 reunification and a secondary permanent plan of legal custody with a relative.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

¶8 Respondent-mother and respondent-father made some progress toward

 satisfying the requirements of their case plans prior to the initial review hearing,

 which was held on 14 June 2018. According to a DSS report dated 6 June 2018, both

 respondent-mother and respondent-father had completed their psychological and

 parenting evaluations, neither of which found the conditions of the family home to be

 unsafe or inappropriate for the children. DSS described the improvements in the

 condition of the family home as “significant.” Finally, DSS reported that respondent-

 mother and respondent-father had visited with the children “faithfully,” were

 appropriately engaged with the children during the visits, and had completed the

 required parenting classes.

¶9 A report prepared by the guardian ad litem on 7 June 2018, noted, on the other

 hand, that respondent-mother and respondent-father often ended their visits with

 the children fifteen minutes early and that they had left a three-hour visit in May

 2018 at the two hour mark. In addition, the guardian ad litem indicated that

 respondent-mother and respondent-father continued to struggle with problems

 relating to personal hygiene and that they found it difficult to bring appropriate

 snacks for consumption during visits with the children. Similarly, the guardian ad

 litem stated that respondent-mother and respondent-father had trouble managing

 the children and that only respondent-mother attempted to engage with all four

 children during visits. Finally, the guardian ad litem noted the difficulties that
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 respondent-mother and respondent-father had in attempting to understand the

 problems that arose from the existence of the children’s special needs. The trial court

 did not make any changes to the children’s permanent plan or the existing visitation

 arrangements in an order that was entered on 13 July 2018 following the conclusion

 of the 14 June 2018 review hearing.

¶ 10 In a report prepared prior to a review hearing that was initially scheduled for

 23 August 2018 and held on 13 September 2018, DSS pointed out that both

 respondent-mother and respondent-father had participated in Ellie’s appointments

 and had expressed a willingness to meet with the specialists responsible for Jake and

 Evette as well. According to DSS, respondent-father had difficulty controlling his

 emotions when he was confronted with information that he viewed as adverse,

 including information relating to the children’s placements. Although it believed that

 respondent-mother and respondent-father were continuing to make progress toward

 satisfying the requirements of their case plans, DSS pointed out that they “need[ed]

 to demonstrate their ability to consistently address the developmental, care and well-

 being needs for the children” and “their commitment to the children’s safety and their

 ability to protect the children.” In a report relating to the same period of time, the

 guardian ad litem identified the existence of similar obstacles to the reunification of

 respondent-mother and respondent-father with the children. The trial court did not

 make any changes to the primary permanent plan or the existing visitation
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 arrangements in an order entered on 29 October 2018, but it did change the secondary

 permanent plan to one of guardianship with a court-approved caretaker.

¶ 11 The progress that respondent-mother and respondent-father were making

 toward reunification began to stall in 2019. In a report prepared prior to a review

 hearing that was scheduled for 11 April 2019 and held on 17 May 2019, DSS noted

 that respondent-mother and respondent-father had failed to attend, or even make

 inquiry about, appointments and meetings related to the children’s health and

 development. In addition, DSS pointed out that respondent-mother and respondent-

 father had continued to bring sugary snacks to their visits with the children and

 allowed the children to eat these snacks off of unhygienic surfaces. DSS stated that

 respondent-father denied that there was anything wrong with the type of snacks that

 the children were being provided or the manner in which those snacks were being

 served and questioned whether any of the children had special needs despite having

 been provided with information to the contrary. According to DSS, respondent-

 mother and respondent-father had become less attentive to their own hygiene, with

 their lack of concern about these subjects being indicative of a failure to demonstrate

 the ability to use the skills that they had learned during parenting classes and to

 meet the children’s needs and suggesting the appropriateness of a change in the

 permanent plan for the children from one of reunification to one of adoption. The

 position espoused by DSS was supported by psychological evaluations of both parents
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 that had been performed in February 2019, with the guardian ad litem’s report

 relating to the same period of time expressing support for DSS’ recommended change

 to the children’s permanent plan. In an order entered on 11 July 2019, the trial court

 reduced the amount of visitation to which respondent-mother and respondent-father

 were entitled and changed the permanent plan for the children to a primary plan of

 adoption and a secondary plan of reunification.

¶ 12 On 12 September 2019, DSS filed motions seeking to have respondent-mother’s

 parental rights in all four children terminated on the basis of neglect, N.C.G.S. § 7B-

 1111(a)(1), and dependency, N.C.G.S. § 7B-1111(a)(6), and to have respondent-

 father’s parental rights in Jake terminated on the basis of neglect, N.C.G.S. § 7B-

 1111(a)(1); failure to legitimate, N.C.G.S. § 7B-1111(a)(5); and dependency, N.C.G.G.

 § 7B-1111(a)(6), and to have his parental rights in Evette and Alana terminated on

 the basis of neglect, N.C.G.S. § 7B-1111(a)(1), and dependency, N.C.G.S. § 7B-

 1111(a)(6). After a hearing held on 17 January 2020, which neither respondent-

 mother nor respondent-father attended, the trial court entered orders on 27 February

 2020 terminating respondent-mother’s and respondent-father’s parental rights in the

 children on the basis of all of the grounds for termination alleged in the termination

 motions and a determination that the termination of respondent-mother’s and
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 respondent-father’s parental rights would be in the children’s best interests.3

 Respondent-mother and respondent-father noted appeals to this Court from the trial

 court’s termination orders.4

 II. Analysis

¶ 13 In seeking relief from the trial court’s termination orders before this Court,

 respondent-mother and respondent-father challenge many of the trial court’s findings

 of fact as lacking sufficient evidentiary support or as otherwise legally deficient and

 3 The trial court entered separate adjudication orders and separate dispositional
 orders for each of the four children, resulting in a total of eight termination-related orders.
 For the sake of clarity, however, we will refer to the adjudication orders that the trial court
 entered at the conclusion of the termination proceeding as “termination orders” and reserve
 the expression “adjudication order” for the order in which the trial court determined that the
 children were neglected juveniles.
 4 In her notice of appeal, respondent-mother states that she is appealing from “the

 Adjudication and Disposition Orders, entered . . . on January 17, 2020 as same day orders
 . . . as well as any subsequent formal Adjudication and Disposition Orders.” Although the
 termination hearing was held on 17 January 2020, the trial court’s written termination-
 related orders were entered on 27 February 2020. A notice of appeal is required to “designate
 the judgment or order from which appeal is taken,” N.C. R. App. P. 3(d), with “[c]ompliance
 with the requirements for entry of notice of appeal [being] jurisdictional[,]” State v. Oates,
 366 N.C. 264, 266 (2012) (citing Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., 362
 N.C. 191, 197–98 (2008)). “As such, ‘the appellate court obtains jurisdiction only over the
 rulings specifically designated in the notice of appeal as the ones from which the appeal is
 being taken.’ ” Sellers v. Ochs, 180 N.C. App. 332, 334, (2006). However, “a mistake in
 designating the judgment, or in designating the part appealed from if only a part is
 designated, should not result in loss of the appeal as long as the intent to appeal from a
 specific judgment can be fairly inferred from the notice and the appellee is not misled by the
 mistake.” Evans v. Evans, 169 N.C. App. 358, 363 (2005) (quoting Van Ramm v. Van Ramm,
 99 N.C. App. 153, 156–57 (1990)). In view of the fact that DSS and the guardian ad litem
 have not moved to dismiss respondent-mother’s appeal and have fully participated in the
 proceedings before this Court, they do not appear to have been misled by respondent-mother’s
 mistake in designating the orders from which she has appealed. As a result, we will address
 the merits of respondent-mother’s appeal.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 the extent to which the trial court’s findings of fact and the record evidence support

 the trial court’s determination that their parental rights in the children were subject

 to termination. In conducting a termination of parental rights proceeding, the trial

 court begins by determining whether any of the grounds for termination delineated

 in N.C.G.S. § 7B-1111(a) exist. See N.C.G.S. § 7B-1109 (2019). “At the adjudicatory

 stage, the petitioner bears the burden of proving by ‘clear, cogent, and convincing

 evidence’ the existence of one or more grounds for termination under section 7B-

 1111(a) of the General Statutes.” In re A.U.D., 373 N.C. 3, 5–6 (2019) (quoting

 N.C.G.S. § 7B-1109(f)). “If a trial court finds one or more grounds to terminate

 parental rights under N.C.G.S. § 7B-1111(a), it then proceeds to the dispositional

 stage,” id. at 6, at which it “determine[s] whether terminating the parent’s rights is

 in the juvenile’s best interest.” N.C.G.S. § 7B-1110(a) (2019).

¶ 14 We review a trial court’s adjudicatory decision for the purpose of

 “determin[ing] whether the findings are supported by clear, cogent and convincing

 evidence and the findings support the conclusions of law.” In re E.H.P., 372 N.C. 388,

 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)). “A trial court’s

 finding of fact that is supported by clear, cogent, and convincing evidence is deemed

 conclusive even if the record contains evidence that would support a contrary

 finding.” In re B.O.A., 372 N.C. 372, 379 (2019) (citing In re Moore, 306 N.C. 394,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 403–04 (1982)). “The trial court’s conclusions of law are reviewable de novo on

 appeal.” In re C.B.C., 373 N.C. 16, 19 (2019).

 A. Respondent-father’s arguments

¶ 15 In his brief, respondent-father challenges the majority of the trial court’s

 findings on the basis that they (1) constitute nothing more than recitations of witness

 testimony, reports, or the trial court’s beliefs, (2) lack sufficient evidentiary support,

 or (3) are overbroad. Respondent-father also challenges the trial court’s conclusions

 that his parental rights in Jake, Evette, and Alana are subject to termination.

 1. Challenges to Findings of Fact

 a. Recitations of Testimony, the Contents of Documents, or the Trial Court’s
 Beliefs

¶ 16 According to respondent-father, Finding of Fact Nos. 15–18 and 21–27 in the

 termination orders relating to Jake and Evette and Finding of Fact Nos. 15–18 and

 21–27 in the termination order relating to Alana constitute mere recitations of

 witness testimony, reports, or the trial court’s beliefs “without an assessment of

 credibility.” As this Court has previously held, “[r]ecitations of the testimony of each

 witness do not constitute findings of fact by the trial judge” absent an indication

 concerning “whether [the trial court] deemed the relevant portion of [the] testimony

 credible.” In re N.D.A., 373 N.C. 71, 75 (2019) (first alteration in original) (quoting

 Moore v. Moore, 160 N.C. App. 569, 571–72 (2003)). In In re N.D.A., the trial court

 found that the father had “testified that he had ‘attempted to set up visits with the
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 child but could not get any assistance in doing so,’ ” with the father having argued on

 appeal that the finding in question constituted nothing more than a recitation of his

 own testimony, a contention with which this Court agreed given the trial court’s

 failure to indicate whether the relevant portion of the father’s testimony was credible.

 Id. As a result, we disregarded the challenged finding of fact in evaluating the

 validity of the trial court’s termination order. Id.

¶ 17 After carefully reviewing the trial court’s termination orders, we agree with

 respondent-father that Finding of Fact Nos. 16–18 and 23 in all three termination

 orders, Finding of Fact No. 24 in the termination order relating to Alana, and Finding

 of Fact No. 22 in the termination orders relating to Jake and Evette constitute mere

 recitations of testimony given that each of the challenged findings of fact simply recite

 that a particular witness either “testified” or “stated” a particular proposition without

 any indication that the trial court evaluated the credibility of the relevant witness or

 resolved any contradictions in his or her testimony. As a result, as in In re N.D.A.,

 we will disregard these findings of fact in evaluating the extent to which the trial

 court properly found that respondent-father’s parental rights in the children were

 subject to termination.

¶ 18 We note, however, that “[t]here is nothing impermissible about describing

 testimony, so long as the court ultimately makes its own findings, resolving any

 material disputes,” In re T.N.H., 372 N.C. 403, 408 (2019) (quoting In re C.L.C., 171
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

N.C. App. 438, 446 (2005), aff’d per curiam, in part, and disc. rev. improvidently

allowed, in part, 360 N.C. 475 (2006)), which is what the trial court, in many

instances, did in this case. In addition to making findings of fact that recited the

testimony of various witnesses, the trial court made findings of fact that resolved a

number of material disputes in the record evidence by stating that the children were

previously adjudicated neglected juveniles on the basis of a consent order signed by

respondent-mother and respondent-father and that respondent-mother and

respondent-father had “stipulated the juvenile[s] [were] neglected juvenile[s], in that

the juvenile[s] did live in an environment injurious due to the conditions of the home,

including a roach infestation, unsanitary conditions of the home and hygiene of the

juvenile[s]”; the juveniles did not receive proper care from respondent-mother and

respondent-father; that respondent-mother and respondent-father “show[ed] a

pattern of neglect and a failure to understand the need to change diapers, keep the

home and the juvenile[s] clean, and keep themselves clean”; that respondent-mother

and respondent-father did not appear to believe that there were any problems that

they needed to address; that, while the level of sanitation in the family home

appeared to have improved, there was “no indication of acceptance that there was a

problem that needed addressing to begin with”; that respondent-father continued to

assert that the children did not have special needs despite being provided with

documents indicating that the children’s alleged needs were genuine; that the care
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 that respondent-mother provided for the children was insufficient; and that

 respondent-father had failed to provide the children with consistent care. As a result,

 these findings of fact are appropriately considered in evaluating the lawfulness of the

 trial court’s termination orders.

¶ 19 In addition, respondent-father argues that Finding of Fact Nos. 15, 21, and 24–

 27 in the termination orders relating to Jake and Evette and Finding of Fact Nos. 15,

 21–22, and 25–28 in the termination order relating to Alana are nothing more than

 mere recitations of portions of the record. As far as Finding of Fact Nos. 15 and 24 in

 Jake’s and Evette’s termination orders and Finding of Fact Nos. 15 and 25 in Alana’s

 termination order are concerned, “the trial court in this case relied partly on evidence

 from prior proceedings and findings in earlier orders, which . . . is proper and

 appropriate.” In re T.N.H., 372 N.C. at 408.

¶ 20 In In re T.N.H., the mother argued that certain findings “were improper

 because they merely recite prior allegations, describe what various people not in

 court, or unidentified, believed about certain events, and do not meet the standard

 for evidentiary findings sufficient to support conclusions of law.” Id. In rejecting this

 argument, we noted that:

 A trial court may take judicial notice of findings of
 fact made in prior orders, even when those findings are
 based on a lower evidentiary standard because where a
 judge sits without a jury, the trial court is presumed to
 have disregarded any incompetent evidence and relied
 upon the competent evidence. Munchak Corp. v. Caldwell,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981). As this
 Court has stated:

 [E]vidence of neglect by a parent prior to
 losing custody of a child—including an
 adjudication of such neglect—is admissible in
 subsequent proceedings to terminate parental
 rights. The trial court must also consider any
 evidence of changed conditions in light of the
 evidence of prior neglect and the probability
 of a repetition of neglect.

 In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232
 (1984). We agree with the Court of Appeals’ precedent
 holding that the trial court may not rely solely on prior
 court orders and reports but must receive some oral
 testimony at the hearing and make an independent
 determination regarding the evidence presented. In re
 A.M., J.M., 192 N.C. App. 538, 541–42, 665 S.E.2d 534, 536
 (2008), appeal after remand, 201 N.C. App. 159, 688 S.E.2d
 118 (2009) (unpublished).

Id. (alteration in original). After noting that the trial court had taken judicial notice

of certain orders upon which it had relied in making the challenged findings of fact

and that “the social worker assigned to the case testified at the hearing regarding”

the subject matter of the findings, we held that “[t]he trial court’s findings of fact

appear to be based, at least in part, on testimony provided at the hearing, sufficient

to demonstrate that the trial court made an independent determination regarding

the evidence presented.” Id. The same is true of Finding of Fact No. 15 in the

termination orders relating to all three juveniles, to Finding of Fact Nos. 24 and 27

in the termination orders relating to Jake and Evette, and to Finding of Fact Nos. 25
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 and 28 in the termination order relating to Alana, all of which described what the

 social worker did, what DSS had determined, and what the trial court had previously

 found or concluded.

¶ 21 The trial court took judicial notice of the findings of fact and orders in the

 adjudication orders that were entered relating to all three children. In Finding of

 Fact No. 15 in all three adjudication orders, the trial court found that, following the

 receipt of the child protective services report, a social worker noted that the home had

 “roaches throughout[,] . . . a pile of dirty diapers at the door[,] . . . [and] trash and food

 debris scattered around the home.” This finding rested upon the findings that had

 been made in prior orders in the underlying neglect proceeding that were

 incorporated into reports submitted by DSS and the guardian ad litem. The reports

 submitted by DSS and the guardian ad litem detailed the conditions found in the

 home and the investigating social worker described these conditions at the

 termination hearing, during which she testified that she had personally observed

 roaches throughout the home, a pile of dirty diapers within reach of the children, food

 scattered throughout the home in the vicinity of roaches, and plates of food and

 leftover pans in the kitchen.

¶ 22 Similarly, in Finding of Fact No. 24 in the termination order relating to Jake

 and Evette and Finding of Fact No. 25 in the termination order relating to Alana, the

 trial court found that DSS had discovered that the juveniles had significant needs,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 that there were concerns about the nutrition that the juveniles were receiving, and

 that the juveniles had tested positive for the presence of high levels of lead. As was

 the case with the findings discussed in the immediately preceding paragraph, the

 challenged trial court findings rely upon orders that the trial court entered during

 the underlying neglect proceeding that, in turn, relied upon the DSS and guardian

 ad litem reports that detailed the relevant +information. In addition, the trial court

 did not place sole reliance upon these reports given that the social worker testified

 that her investigation of the medical records led to concerns about the quality of the

 nutrition provided in the home, which included sugary drinks and limited food

 choices, and that Jake and Ellie had tested positive for high levels of lead exposure.

 Similarly, another social worker testified that Jake had been diagnosed with a

 chromosomal issue that mimicked autism; that Evette had medical and

 developmental issues, including a hernia and speech difficulties, that needed to be

 addressed by the parents; that Alana had developed dental problems at four months

 of age; and that Ellie had experienced global delays in kindergarten, had an extensive

 IEP, and had failed kindergarten.

¶ 23 Respondent-father also argues that Finding of Fact No. 27 in the termination

 orders relating to Jake and Evette and Finding of Fact No. 28 in the termination

 order relating to Alana constituted mere recitations of record information. In the

 challenged findings, the trial court stated that it previously found in the underlying
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 neglect proceeding, following a hearing held on 17 May 2019, that respondent-father

 did not believe that Jake needed the recommended therapies and expressed a need

 to go to work. Once again, the relevant finding is a reference to a prior order rather

 than a mere recitation of record evidence. In re T.N.H., at 408. In a permanency

 planning order dated 11 July 2019, the trial court found that respondent-father

 participated in an IEP meeting relating to Jake by phone and stated that he did not

 believe that Jake needed the services that were being recommended and that

 respondent-father needed to get to work. In addition, a social worker testified that

 respondent-father had participated in an IEP meeting relating to Jake by phone,

 respondent-father had previously testified that Jake’s speech delays did not pose a

 problem, and another witness described respondent-father’s focus upon his work

 rather than upon the children’s needs.

¶ 24 As a result, the record reflects that, in making each of the challenged findings,

 the trial court did not rely solely upon prior orders and reports and, instead, also

 heard live testimony from witnesses at the termination hearing. “The trial court’s

 findings of fact appear to be based, at least in part, on testimony provided at the

 hearing” and are “sufficient to demonstrate that the trial court made an independent

 determination regarding the evidence presented.” Id. at 410. Moreover, the

 challenged findings of fact, rather than merely reciting portions of the record

 evidence, simply acknowledge what a social worker observed, what DSS had
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 determined, and what the trial court had previously found or concluded. Thus, we

 hold that respondent-father’s challenge to these findings lacks merit. See also In re

 J.M.J.-J, 374 N.C. 553, 558 (2020).

¶ 25 Finally, respondent-father’s argument to the contrary notwithstanding,

 Finding of Fact Nos. 21, 25 and 26 in the termination orders relating to Jake and

 Evette and Finding of Fact Nos. 21, 22, 26 and 27 in the termination orders relating

 to Alana are not mere recitations of the testimony of various witness or other items

 of evidence admitted at the termination hearing and, instead, constitute findings

 made by the trial court based upon its consideration of the evidence. In re Appeal of

 Harris Teeter, LLC, 271 N.C. App. 589, 611 (2020) (stating that “[a] finding of fact is

 a ‘determination reached through logical reasoning from the evidentiary facts’ ”)

 (quoting Barnette v. Lowe’s Home Ctrs., Inc., 247 N.C. App. 1, 6 (2016))), aff’d, 2021-

 NCSC-80 (2021). As a result, respondent-father’s challenge to these findings of fact

 lacks merit.

 b. Evidence Provided by Dr. Bennett

¶ 26 In his next challenge to the trial court’s termination orders, respondent-father

 asserts that the majority of the trial court’s remaining findings of fact either lack

 sufficient evidentiary support or are excessively imprecise. As an initial matter,

 respondent-father challenges Finding of Fact Nos. 21 and 40 in the termination

 orders relating to Jake and Evette and Finding of Fact Nos. 21 and 41 in the
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 termination order relating to Alana, which discuss the psychological evaluation given

 to respondent-mother by Dr. Bennett in 2014. According to respondent-father, the

 2014 evaluation was so remote in time as to be irrelevant, with respondent-mother

 having been under no obligation to comply with any DSS recommendation in 2014.

 For that reason, respondent-father urges us to exclude the relevant findings from our

 evaluation of the lawfulness of the trial court’s termination orders. However, since

 the challenged findings of fact relate to respondent-mother rather than to respondent-

 father, they have no bearing upon the validity of respondent-father’s challenge to the

 trial court’s termination orders. As a result, we decline to address the validity of this

 aspect of respondent-father’s challenge to the trial court’s termination orders. See In

 re T.N.H., 372 N.C. at 407 (stating that “we review only those findings necessary to

 support the trial court’s determination that grounds existed to terminate

 respondent’s parental rights”).

¶ 27 In addition, respondent-father argues, with respect to his own evaluation by

 Dr. Bennett in 2018, that any “findings that state or imply [the] report was valid are

 erroneous” given that Dr. Bennett’s “conclusions, answers to questions, and

 recommendations derive from a gross misunderstanding of the relevant facts.” After

 excluding the portions of the challenged findings that we have already addressed in

 the earlier portions of this opinion, it appears that this aspect of respondent-father’s
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

argument involves two findings of fact. First, he challenges Finding of Fact No. 20 in

all three of the relevant termination orders, which provides:

 That the juvenile was adjudicated neglected via a consent
 order signed by the mother and putative father on March
 22nd, 2018. The mother and putative father stipulated that
 the juvenile was a neglected juvenile, in that the juvenile
 did live in an environment injurious due to the conditions
 of the home, including a roach infestation, unsanitary
 conditions of the home and hygiene of the juvenile. The
 juvenile did not receive proper care by the parents.

Although respondent-father attacks this finding as resting upon a failure on the part

of Dr. Bennett to understand the relevant facts, it makes no mention of Dr. Bennett

and is fully supported by the record evidence. The children were adjudicated to be

neglected juveniles by means of a stipulation into which respondent-mother and

respondent-father entered on 22 March 2018 and which stated that the juveniles “did

not receive proper care, supervision, or discipline from” respondent-mother and

respondent-father and that respondent-mother and respondent-father waived the

presentation of evidence in support of the stipulation. The trial court took judicial

notice of this stipulation, see In re Ordinance of Annexation No. 1977-4, 296 N.C. 1,

14 (1978) (stating that “stipulations constitute judicial admissions binding on the

parties and dispense with the necessity of proving the stipulated fact” and “continue

in force for the duration of the controversy and preclude the later assertion of a

position inconsistent therewith”), in the 11 May 2018 adjudication order, in which the

trial court stated that:
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 [Respondent-mother and respondent-father], through their
 respective counsel, acknowledge the children are neglected
 juveniles, as they were in an environment injurious due to
 the conditions of the home, including a roach infestation,
 unsanitary conditions of the home and hygiene of the
 children. The children did not receive proper care by the
 parents.

 See In re Ballard, 311 N.C. 708, 715 (1984) (stating that “evidence of neglect by a

 parent prior to losing custody of a child—including an adjudication of such neglect—

 is admissible in subsequent proceedings to terminate parental rights”). In view of

 the fact that “respondent[-father] did not appeal from the trial court’s adjudication

 order,” he “is bound by the doctrine of collateral estoppel from re-litigating these

 findings of fact.” In re T.N.H., 372 N.C. at 409 (citing King v. Grindstaff, 284 N.C.

 348, 356 (1973) (stating that, in accordance with the doctrine of collateral estoppel,

 parties “are precluded from retrying fully litigated issues that were decided in any

 prior determination and were necessary to the prior determination”)).

¶ 28 Similarly, respondent-father challenges the trial court’s finding in all three

 termination orders that “[r]ecommendations were also made to the putative father by

 Dr. Bennett in 2018 through a Psychological Evaluation.” According to respondent-

 father, Dr. Bennett was under the impression that, in April 2018, respondent-father

 and respondent-mother still lived in filthy conditions and had made no progress

 toward improving the condition of their home environment. Assuming, without in

 any way deciding, that respondent-father’s factual assertions are valid, they have
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 little bearing upon the issue of whether Dr. Bennett made recommendations relating

 to respondent-father in a 2018 psychological evaluation. Furthermore, Dr. Bennett

 testified that he evaluated respondent-father in 2018, with the report that he

 prepared at the time of this evaluation having been admitted into evidence. Dr.

 Bennett’s report recommended that respondent-father participate in parenting

 classes, ensure that the children receive safe and adequate care in his care, and

 maintain a home that was safe and did not pose a health hazard. As a result, we

 conclude that the challenged finding has ample evidentiary support.

¶ 29 In contending that the trial court should have refrained from considering Dr.

 Bennett’s report in its entirety, respondent-father points to the presence of a note at

 the end of Dr. Bennett’s report stating that respondent-father was with respondent-

 mother “when her children were removed in 2014” while arguing that no “removal”

 had occurred at that time. In the same vein, respondent-father claims that Dr.

 Bennett was not aware that respondent-father and respondent-mother had kept the

 home in a cleaner condition from the spring of 2018 until the date of the hearing.

 Upon being asked whether Ellie had been removed from respondent-mother’s and

 respondent-father’s care in 2014 after respondent-mother had left the child in the car

 for approximately fourteen minutes during ninety degree weather, Dr. Bennett

 testified that “I don’t see that I’ve made a notation that [DSS] had custody. So, no, I

 — I don’t think I knew that at that time.” As a result, given that Dr. Bennett denied
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 any knowledge that Ellie had been removed from the care of respondent-mother and

 respondent-father in 2014, we do not believe that the inclusion of a single erroneous

 phrase precluded the trial court from relying upon other portions of Dr. Bennett’s

 report in deciding the issues that were before it in this case.

¶ 30 Similarly, respondent-father notes that he and respondent-mother were just

 “making progress on removing the roaches and cleaning their home” on 22 March

 2018 and had begun to keep their house clean beginning in “the spring of 2018[.]” In

 view of the fact that the progress that respondent-mother and respondent-father had

 made in connection with the cleanliness of their home had just begun at the time of

 Dr. Bennett’s report, the record evidence tends to show that Dr. Bennett’s report does

 not reflect a misunderstanding of the issues that needed to be addressed by

 respondent-mother and respondent-father or the status of the home at the time that

 he conducted his evaluation. At the hearing, Dr. Bennett was asked multiple

 questions in which he was requested to assume that respondent-mother and

 respondent-father had been able to keep their home clean from April 2018 to the date

 of the termination hearing. In answering these questions, Dr. Bennett stated, that

 “it ha[d] been almost three years since I’d seen them. So that for me would be — is if

 that home ha[d] been reasonably clean for those three years, then that would for me

 say, well, it sounds like they are able to do that,” and that, “if it’s been clean for three

 years, then that would suggest that they had succeeded.” Thus, the record reflects
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 that Dr. Bennett fully considered the possibility that respondent-mother’s and

 respondent-father’s ability to maintain their home in a clean and sanitary condition

 had improved and that, even considering this factor, he “still ha[d] concerns about

 the capacity to parent” and that he “would have real reservations about their ability

 to” parent the children. As a result, the trial court did not err in considering Dr.

 Bennett’s report and the testimony that he provided at the termination hearing.

 c. Other Findings

¶ 31 In his remaining challenges to the trial court’s findings, respondent-father

 argues that the record does not support the findings in the termination orders

 relating to Jake, Evette, and Alana that he “did not complete parenting classes which

 were recommended by Dr. Bennett and Dr. Holm.”5 In view of the fact that a social

 worker testified that, despite the absence of any supporting records in the file, she

 understood that both respondent-mother and respondent-father had completed

 parenting classes and the fact that the reports that both DSS and the guardian ad

 litem had prepared for an 11 April 2019 hearing stated that respondent-father had

 5 Respondent-father also claims that the findings contained in all three termination

 orders relating to respondent-mother’s failure to complete parenting classes and to attend
 “any therapies” for the juveniles and the trial court’s findings that respondent-mother’s
 caregiving had been insufficient and that she did not feel that there were issues that needed
 to be addressed lack sufficient evidentiary support. In light of the fact that these findings
 have no bearing upon the termination of respondent-father’s parental rights, we will review
 them in the course of addressing respondent-mother’s appeal. See In re T.N.H., 372 N.C. 408,
 407 (2019) (stating that “we review only those findings necessary to support the trial court’s
 determination that grounds existed to terminate respondent’s parental rights”).
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 completed parenting classes, we conclude that respondent-father’s contention to this

 effect has merit. As a result, we will disregard this finding in determining whether

 the trial court erred by determining that respondent-father’s parental rights were

 subject to termination. See In re N.G., 374 N.C. 891, 901 (2020) (disregarding findings

 of fact not supported by clear, cogent, and convincing evidence).

¶ 32 In addition, respondent-father argues that the trial court erred by finding that

 he “ha[d] not attended any therapies.” Once again, we agree that respondent-father’s

 contention has merit. A social worker testified that, in May 2019, DSS was instructed

 to give respondent-mother and respondent-father the contact information for each of

 the children’s medical providers and that she attempted to comply with this

 instruction. Although the record does not reflect the number of appointments that

 respondent-father and respondent-mother actually attended, a DSS report prepared

 in advance of the 12 September 2019 review hearing stated that respondent-father

 had routinely attended Evette’s speech therapy appointments and that respondent-

 father had attended one of Alana’s dental appointments and a swallow test for Evette

 before stating that respondent-father “has not called or participated with any other

 appointments or sessions regarding these two or any other children.” The

 permanency planning order entered on 11 October 2019, which incorporated the

 related DSS report into its findings of fact, found that respondent-father had attended

 the appointments listed above while having failed to attend numerous other
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 appointments. As a result, since the record evidence does not support the trial court’s

 finding that respondent-father had failed to attend “any” therapies, we will disregard

 the trial court’s findings to that effect in determining whether respondent-father’s

 parental rights in the children were subject to termination. See id.

¶ 33 Next, respondent-father challenges the trial court’s finding, which appears in

 all three termination orders, that, when DSS became involved with the family, there

 were “concerns with the juvenile testing positive for high levels of lead.” In

 respondent-father’s view, the record does not contain any evidence tending to show

 that “all juveniles tested positive for high levels of lead.” Although a social worker

 testified that Jake and Ellie had tested positive for high levels of lead, there is no

 similar evidence relating to Evette and Alana. As a result, we will disregard any

 finding that the trial court might have made to the effect that Evette and Alana had

 tested positive for high levels of lead in determining whether the trial court correctly

 determined that respondent-father’s parental rights in the children were subject to

 termination. See id.

¶ 34 Similarly, respondent-father argues that the trial court erred by making

 Finding of Fact No 35 in the termination orders relating to Jake and Evette and

 Finding of Fact No. 36 in the termination order relating to Alana, which state that

 “there appears to be an improvement in the sanitation of the home as evidenced by

 the photos submitted into evidence” on the grounds that the challenged findings
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 “misstate[ ] the record” given that “every order entered . . . since the spring of 2018

 [found] that the parents had corrected the conditions in the home.” Aside from our

 inability to understand why respondent-father would challenge a finding of fact that

 indicated that the sanitation in the home had improved, his own characterization of

 the record supports, rather than undercuts, the challenged findings. A social worker

 testified that respondent-father and respondent-mother cooperated with the

 exterminator and that, when the social worker visited the home in September 2019,

 she discovered that, while the exterior of the home showed the presence of clutter,

 the inside was “free from trash and waste products,” with the photographs that were

 admitted into evidence tending to support this assertion. As a result, the challenged

 findings of fact have sufficient evidentiary support.

¶ 35 Furthermore, respondent-father argues that the trial court’s finding that

 “there is still no indication of acceptance that there was a problem that needed

 addressing to begin with” is only supported by psychological reports “which are based

 on erroneous information.” As we have already noted, the record reflects that Dr.

 Bennett, a psychologist who has done parenting capacity evaluations for ten to twenty

 years, evaluated respondent-father in 2018. After being qualified as an expert in

 psychology and conducting parenting capacity evaluations, Dr. Bennett testified that

 respondent-father believed that “there was really no problem[,]” that DSS was

 picking on him and unfairly interfering in his life, that the situation was being
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 exaggerated, and that everything was fine. Dr. Bennett described respondent-father

 as “someone who did not seem to recognize the seriousness of the condition that DSS

 was . . . reporting,” who was not focused on the conditions in his home, and who did

 not think that those conditions were unsafe or unsanitary. Dr. Bennett stated that,

 while most parents whom he evaluates initially believe that there is no reason for

 them to be seeing him, at some point they recognize that “they need to make some

 changes because whatever was happening was harming a child,” while, on the other

 hand, respondent-mother and respondent-father continued to minimize the gravity

 of the situation that the children faced and had an attitude of “it’s not that bad,” “our

 kids are fine[,]” “[w]e’re doing fine[,]” “[s]tay out of my life.” Finally, Dr. Bennett

 testified that respondent-father did not believe that either he or respondent-mother

 had done anything worthy of DSS involvement. In the same vein, a social worker

 who had interacted with respondent-father and respondent-mother before and after

 the children’s removal from the home testified that neither parent appeared to

 understand DSS’ concerns with the condition of the home, stating that respondent-

 father “often minimized the conditions of the home and wouldn’t take responsibility.”

 As a result, the record evidence fully supports the challenged finding.

¶ 36 Moreover, respondent-father argues that certain of the trial court’s findings of

 fact, “to the extent they describe a condition or belief that has endured over time or

 existed at the termination hearing,” lack sufficient evidentiary support on the theory
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

that the “evidence does not support the findings to the extent they attempt to describe

conditions or views that existed after the spring of 2018.” For example, respondent-

father challenges the finding contained in all three termination orders that

respondent-mother and respondent-father “have shown a pattern of neglect and a

failure to understand the need to change diapers, keep the home and the juvenile

clean, and keep themselves clean.” However, a social worker described the existence

of a problem stemming from a failure to change diapers in a timely manner, both in

2014 and in 2018. In addition, the social worker testified that the home occupied by

respondent-mother and respondent-father was dirty in both 2014 and 2018. Finally,

two social workers and Dr. Bennett described the level of hygiene maintained by

respondent-mother and respondent-father during the initial investigation in 2018, at

the time of Dr. Bennett’s evaluation, and during more recent interactions that began

in March of 2019 and continued during visitation sessions and other face-to-face

meetings. As a result, the record contains sufficient evidence to support the

challenged findings of fact. See In re J.O.D., 374 N.C. 797, 806 (2020) (stating that,

“[a]lthough there was record evidence that would have supported a contrary decision,

‘this Court lacks the authority to reweigh the evidence that was before the trial

court’ ” (quoting In re A.U.D., 373 N.C. at 12)); In re T.N.H., 372 N.C. at 411

(recognizing that it is the trial court’s “duty to consider all the evidence, pass upon

the credibility of the witnesses, and determine the reasonable inferences to be drawn
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 from the testimony”); In re Montgomery, 311 N.C. at 110–11 (stating that “our

 appellate courts are bound by the trial courts’ findings of fact where there is some

 evidence to support those findings, even though the evidence might sustain findings

 to the contrary”).

¶ 37 The next challenged finding, which appears in all three termination orders,

 states that respondent-father “has failed to provide consistent care with respect to

 the juvenile.” Respondent-father contends that this finding lacks sufficient

 evidentiary support to the extent that it purports to describe conditions that

 continued beyond the spring of 2018. As we have already noted, however, a social

 worker described the conditions that existed in the home in 2018 as including the

 presence of “roaches throughout[,] . . . a pile of dirty diapers at the door[,] . . . [and]

 trash and food debris scattered around the home.” In addition, respondent-mother

 and respondent-father stipulated that the juveniles “did not receive proper care,

 supervision, or discipline from” them at the time that the juvenile petitions were filed

 in the underlying neglect and dependency proceeding. Similarly, Dr. Bennett

 testified that respondent-father did not believe that any unsafe or unsanitary

 conditions existed in the family home, that he believed that he and respondent-

 mother were being unfairly targeted by DSS, that respondent-father did not recognize

 the seriousness of the conditions that the family faced and was not focused upon

 resolving them, that respondent-father was not the primary “or even a real active
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 parent,” and that respondent-father left the actual parenting to respondent-mother

 even though the children were not safe in her care. Furthermore, Dr. Bennett did

 not believe that respondent-father could create an environment for appropriate child

 development, that he could care for the children’s needs, that the children were safe

 in his care, or that he understood the health risks of the living environment. After

 hearing the testimony at the termination hearing, Dr. Bennett opined that he still

 believed that it was unlikely that respondent-mother and respondent-father could

 successfully parent the children in light of several of the children’s special needs and

 their limited parenting capabilities.

¶ 38 The concerns that Dr. Bennett expressed were supported by the testimony of

 other witnesses. At the termination hearing, a social worker testified that

 respondent-father minimized the conditions in the home and did not take them

 seriously. Another social worker testified that respondent-mother and respondent-

 father had not completed all aspects of their care plans, having fallen short in the

 areas of hygiene, the ability to demonstrate parenting skills, and maintaining

 consistent communication with DSS. See In re M.A., 2021-NCSC-99, ¶ 32 (stating

 that “[a] parent’s failure to make progress in completing a case plan is indicative of a

 likelihood of future neglect” (quoting In re M.A., 374 N.C. 865, 870 (2020))). The social

 worker testified that, even though respondent-mother took the lead during visits, her

 skills were minimal, she could not handle all four children simultaneously, and she
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 tended to ask the visitation worker what to do or hand a child off to the visitation

 worker during difficult situations even though respondent-father was present. The

 social worker also testified that, if a visitation worker made any suggestions to

 respondent-mother or respondent-father, they would argue with the visitation

 worker.

¶ 39 According to the social worker, during one visit, respondent-father “got very

 frustrated with [Jake], and very loudly in a crowded park was like I’ve had enough of

 this to the point where in this crowded park everybody’s head turned,” leading to

 respondent-mother’s intervention. According to the social worker, there had been “a

 number of issues during the visits[,]” including the fact that respondent-mother and

 respondent-father could not manage all four children, resulting in a decision to limit

 future visits to two children; the fact that, when all four children were in attendance,

 two supervisors needed to be present as well; the fact that, invariably, one of the

 children would be left out during the visits; the fact that respondent-father showed a

 preference for one child over the others; the fact that respondent-mother and

 respondent-father spoke about the case during visits; the fact that, when Ellie

 referred to her foster mother as “mom” or “mommy” during a visit, respondent-mother

 and respondent-father got upset, with respondent-father having told Ellie that he

 would “bust [her] butt” if she called the foster mother “mommy” again; that, when the

 visitation worker addressed his conduct, respondent-father “started yelling at the
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 visitation worker that he didn’t care” and that “[h]e was gonna do what he needed to

 do” and “say what he wanted to say” to Ellie; and that respondent-father would argue

 with visitation workers and refuse to comply when redirected during visits. The

 social worker testified that, at the time of the hearing, respondent-mother and

 respondent-father had not demonstrated the existence of the ability to parent

 consistently, any interest in learning what it would take to parent the children, the

 ability to parent the four children at the same time, or a desire to do what needed to

 be done for the children and to make them a priority. As a result, for all of these

 reasons, the record evidence amply supports the trial court’s findings that

 respondent-father failed to provide consistent care to Jake, Evette, and Alana and

 that the pattern of neglect that existed at the time that the children were removed

 from the family home had continued to the time of the termination hearing, so that

 this aspect of respondent-father’s challenge to the trial court’s termination orders has

 no merit.

¶ 40 In addition, respondent-father argues that the record did not support the trial

 court’s findings that he did not believe that the juveniles had special needs, that he

 “does not appear to feel that there are any issues that need to be addressed[,]” and

 that “there is still no indication of acceptance that there was a problem that needed

 addressing to begin with” “to the extent they describe a condition or belief that has

 endured over time or existed at the termination hearing.” On the contrary, however,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 respondent-father testified at a permanency planning hearing that Jake’s speech was

 normal rather than delayed, with a social worker having described these comments

 at the termination hearing. In addition, as we have already noted, the trial court

 found in a permanency planning order entered on 11 July 2019 that, during an IEP

 meeting relating to Jake, respondent-father denied that Jake needed the proposed

 services before indicating that respondent-father needed to get to work. In the same

 vein, we also reiterate that Dr. Bennett and a social worker testified that respondent-

 father did not agree that the juveniles had any problems and believed, instead, that

 DSS was simply harassing the family. The challenged findings are also supported by

 the evidence concerning respondent-father’s conduct during visits with the children,

 in which he refused to change his behavior when redirected by visitation workers and,

 instead, told them that he was going to act as he wished. As a result, the trial court

 reasonably inferred that respondent-father’s failure to recognize the problems that

 had resulted in DSS intervention continued throughout the course of the underlying

 neglect and dependency proceeding and the termination of parental rights

 proceeding. See In re J.O.D., 374 N.C. at 806; In re T.N.H., 372 N.C. at 411; In re

 Montgomery, 311 N.C. at 110–11.

¶ 41 Next, respondent-father challenges the trial court’s references to him as the

 “putative father” in the orders that the trial court entered during the underlying

 neglect and dependency proceeding and in Finding of Fact No. 43 in the portion of the
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 termination order relating to Jake, which stated that respondent-father had “never

 legitimated the juvenile” in the manner required by law or submitted to a DNA test.

 In view of the fact that this argument relates to the trial court’s decision that

 respondent-father’s parental rights in Jake were subject to termination based upon a

 failure to legitimate Jake pursuant to N.C.G.S. § 7B-1111(a)(5) and the fact that we

 have, for the reasons set forth below, elected to affirm the trial court’s determination

 that respondent-father’s parental rights in all of his children were subject to

 termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1), we need not address

 this aspect of respondent-father’s challenge to the trial court’s termination orders

 given that “we review only those findings necessary to support the trial court’s

 determination that grounds existed to terminate respondent’s parental rights[,]” In re

 T.N.H., 372 N.C. at 407.

 2. Grounds for Termination

¶ 42 In his final challenge to the trial court’s termination orders, respondent-father

 argues that the trial court erred by concluding that his parental rights in Evette and

 Alana were subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1),

 and dependency, N.C.G.S. § 7B-1111(a)(6), and that his parental rights in Jake were

 subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); failure to

 legitimate, N.C.G.S. § 7B-1111(a)(5); and dependency, N.C.G.S. § 7B-1111(a)(6).

 According to respondent-father, the trial court erred by concluding that his parental
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 rights in all three children were subject to termination on the basis of neglect given

 the absence of any evidence tending to show that, since the spring of 2018, the

 children were subject to any condition that placed them in an injurious environment

 or created a risk that they would be subject to improper care or supervision. Although

 respondent-father does not deny that he stipulated that his children were neglected

 juveniles in March 2018, he claims that the “undesirable conditions existing or

 arising from the date of removal to the termination hearing do not rise to the level of

 neglect” and that the trial court erred by concluding that a repetition of the neglect

 to which the children had been subjected was likely in the event that they were

 returned to his care. We do not find respondent-father’s argument to be persuasive.

¶ 43 A trial court may terminate a parent’s parental rights in a child based upon a

 determination that the parent has neglected that child. N.C.G.S. § 7B-1111(a)(1)

 (2019). A “neglected juvenile” is defined, in pertinent part, as one “whose parent,

 guardian, custodian, or caretaker does not provide proper care, supervision, or

 discipline; . . . or who lives in an environment injurious to the juvenile’s welfare.”

 N.C.G.S. § 7B-101(15) (2019). Although the trial court is entitled to terminate a

 parent’s parental rights in a child in the event that neglect is currently occurring at

 the time of the termination hearing, see, e.g., In re K.C.T., 375 N.C. 592, 599–600

 (2020) (stating that “this Court has recognized that the neglect ground can support

 termination . . . if a parent is presently neglecting their child by abandonment”), the
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 fact that “a child has not been in the custody of the parent for a significant period of

 time prior to the termination hearing” would make “requiring the petitioner in such

 circumstances to show that the child is currently neglected by the parent . . .

 impossible.” In re N.D.A., 373 N.C. at 80 (quoting In re L.O.K., 174 N.C. App. 426,

 435 (2005)). In such circumstances, this Court has stated that “evidence of neglect

 by a parent prior to losing custody of a child — including an adjudication of such

 neglect — is admissible in subsequent proceedings to terminate parental rights”;

 however, “[t]he trial court must also consider any evidence of changed conditions in

 light of the evidence of prior neglect and the probability of a repetition of neglect.” In

 re Ballard, 311 N.C. at 715. After weighing the relevant evidence, the trial court may

 conclude that the parent’s parental rights in the child are subject to termination on

 the basis of neglect if it determines that the evidence demonstrates “a likelihood of

 future neglect by the parent.” In re R.L.D., 375 N.C. 838, 841 (2020) (quoting In re

 D.L.W., 368 N.C. 835, 843 (2016)). As a result, a parent’s parental rights in a child

 may be subject to termination pursuant to N.C.G.S. § 7B-1111(a)(1) in the event that

 the trial court determines that the child has been neglected in the past and that there

 is a likelihood that the child will be neglected in the future if he or she is returned to

 the parent’s care. Id. at 841.

¶ 44 According to respondent-father, the trial court’s findings of fact do not support

 a determination that his parental rights in his children were subject to termination
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

on the basis of neglect given that the problems that led to the initial adjudication of

neglect were resolved before the termination hearing, with the trial court having

failed to give proper consideration to the changes in his circumstances and the

progress that he had made towards reunification following the initial adjudication.

As we have demonstrated in considerable detail above, however, the record contains

ample evidence tending to show that the children, with the consent of both

respondent-mother and respondent-father, were found to be neglected juveniles in

May of 2018, and that (1) the children had significant needs; (2) respondent-mother

and respondent-father exhibited “a pattern of neglect and a failure to understand the

need to change diapers, keep the home and the juvenile[s] clean, and keep themselves

clean”; (3) respondent-father continued to deny that the children had special needs

even after having been presented with “evidence-based documentation”; (4)

respondent-father did not believe that the family had any problems that needed to be

addressed; (5) respondent-father failed to accept “that there was a problem that

needed addressing to begin with”; (6) respondent-father left most of the parenting

responsibilities to respondent-mother and never made any effort to assume

responsibility for the performance of any parenting duties; and (7) respondent-father

failed to provide consistent care for the juveniles. In our view, these findings fully

support the trial court’s determination that Jake, Evette, and Alana were neglected
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 juveniles and that the neglect that they had previously experienced was likely to

 reoccur in the event that they were to be returned to respondent-father’s care.

¶ 45 In addition, respondent-father’s contention to the contrary notwithstanding,

 the trial court’s findings do not rest upon any misapprehension of the applicable law.

 For example, having found that “there appears to be an improvement in the

 sanitation of the home as evidenced by photos submitted into evidence,” it is clear

 that the trial court did, in fact, consider the evidence concerning relevant

 circumstances up to and including the date of the termination hearing. In addition,

 we see no indication that the trial court failed to apply the appropriate standard of

 proof or acted on the basis of an understanding that it could not consider the evidence

 concerning the efforts at reunification that respondent-mother and respondent-father

 did make until the time of the termination hearing given that a social worker testified

 concerning the efforts that respondent-mother and respondent-father made in

 attempting to satisfy the requirements of their case plans and given that the trial

 court made a specific finding that the level of sanitation in the family home had

 improved. As a result, the trial court did not err by concluding that respondent-

 father’s parental rights were subject to termination on the basis of neglect, N.C.G.S.

 § 7B-1111(a)(1).

 B. Respondent-mother’s arguments
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

¶ 46 In her own challenge to the trial court’s termination orders, respondent-mother

 begins by arguing that several of the trial court’s findings of fact constitute mere

 recitations of the testimony of various witnesses or the contents of various reports,

 with these arguments being directed to Finding of Fact Nos. 15–18 in the termination

 orders relating to all four children, Finding of Fact No. 22 in the termination order

 relating to Ellie, Finding of Fact Nos. 22–23 in the termination orders relating to

 Jake and Evette, and Finding of Fact Nos. 23–24 in the termination order relating to

 Alana. We have already addressed Finding of Fact Nos. 15–18 in the orders regarding

 Jake, Evette, and Alana in addressing respondent-father’s challenge to the

 lawfulness of the trial court’s termination orders, with the determinations that we

 made in connection with respondent-father’s appeal being equally applicable to the

 same findings challenged in respondent-mother’s appeal. Similarly, and for the same

 reasons that we gave in connection with our consideration of respondent-father’s

 appeal, we conclude that, while Finding of Fact No. 15 in the order relating to Ellie

 was not improper, Finding of Fact Nos. 16–18 in the order relating to Ellie should be

 disregarded in determining whether respondent-mother’s parental rights in that

 child were subject to termination. In the same vein, having determined that Finding

 of Fact No. 23 in the termination orders relating to Jake, Evette, and Alana; Finding

 of Fact No. 24 in the order relating to Alana; and Finding of Fact No. 22 in the orders

 relating to Jake and Evette were improperly made with respect to respondent-father,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 the same is equally true with respect to respondent-mother. Finally, for the reasons

 stated above, we also conclude that Finding of Fact No. 22 in the termination order

 relating to Ellie was improperly made and will disregard it in the course of

 determining whether respondent-mother’s parental rights were subject to

 termination.

¶ 47 Next, respondent-mother challenges the sufficiency of the evidentiary support

 for several of the trial court’s findings of fact. First, respondent-mother challenges

 the sufficiency of the evidentiary support for the finding of fact contained in all four

 termination orders that “[t]he mother and . . . father have shown a pattern of neglect

 and a failure to understand the need to change diapers, keep the home and the

 juvenile clean, and keep themselves clean.” In addition to the evidence that we relied

 upon in rejecting respondent-father’s challenge to this finding, we note that the

 record also contains evidence tending to show that respondent-mother exhibited a

 pattern of “fail[ing] to understand” the need to address problems relating to the

 sanitary conditions in the home given that she did not see these conditions as

 problematic to begin with. In addition, a social worker and Dr. Bennett, who

 evaluated respondent-mother in 2014 and 2018, both testified that respondent-

 mother’s intellectual limitations resulted in a lack of understanding of the parenting

 skills that DSS had attempted to teach her.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

¶ 48 Dr. Bennett, whose 2014 evaluation of respondent-mother occurred in the

 aftermath of the incident in which she left Ellie alone in a car for approximately

 fourteen minutes on a ninety-degree day, testified that respondent-mother denied the

 existence of any problems in the family, failed to understand the issues that had led

 to her referral to Dr. Bennett, and thought that DSS was treating her unfairly.

 Furthermore, Dr. Bennett testified that respondent-mother did not appear to

 understand child development, that people were attempting to teach her parenting

 skills that were not being learned, and that respondent-mother’s attitude was, “ ‘Why

 are you bugging me? I’m doing okay.’ There’s not really a problem.” Dr. Bennett

 further stated that he did not, in 2014, “see evidence that she exercises the judgment

 and the understanding of — of child development and of safety to keep the children

 safe” and that he “was concerned that — that she did not have that.” Dr. Bennett

 found that respondent-mother did not understand the need to proactively address

 problems arising from dealing with dirty diapers, the problems that could result from

 isolating a child in a car seat or playpen, and the difficulties that could result from a

 failure to address a child’s developmental delays. In conclusion, Dr. Bennett testified

 that, “if you don’t believe that there’s a problem, you’re not going to put the effort into

 it because why.”

¶ 49 Dr. Bennett expressed similar concerns following the evaluation that he

 conducted with respect to respondent-mother in 2018. At that time, Dr. Bennett
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 concluded that respondent-mother did not understand the severity of the conditions

 that existed in the home and had not learned anything from the experiences that she

 had had in 2014. Dr. Bennett testified that, as was the case in 2014, respondent-

 mother lacked the ability to create an appropriate environment for the children, the

 children were not safe in her exclusive care, and she did not understand the health

 risks that resulted from the maintenance of an environment like the one that existed

 in the family home. According to Dr. Bennett, respondent-mother was effectively

 saying, “I don’t understand. You guys are kind of — this is unfair. We’re — we’re

 doing okay. You know, stay out of my life. I just [don’t] see that she was even aware

 that — that the environment was that bad.” Based upon this evidence, we hold that

 the challenged finding of fact has ample evidentiary support with respect to all four

 children. See In re J.O.D., 374 N.C. at 806; In re T.N.H., 372 N.C. at 411; In re

 Montgomery, 311 N.C. at 110–11.

¶ 50 In addition, respondent-mother challenges the findings of fact that appear in

 the termination orders relating to all four children that she did not complete

 parenting classes and has not attended any classes or therapies. A social worker

 testified that respondent-mother and respondent-father completed parenting classes,

 and the record evidence establishes that respondent-mother attended some of the

 children’s medical appointments, while missing others. Having concluded in

 connection with respondent-father’s appeal that these findings, at least in part,
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 lacked sufficient evidentiary support, we reach the same result with respect to

 respondent-mother.

¶ 51 Similarly, respondent-mother, like respondent-father, challenges the

 sufficiency of the evidentiary support for the findings, which appear in all four

 termination orders, that respondent-mother “does not appear to feel that there are

 any issues that need to be addressed” and that there “is still no indication of

 acceptance that there was a problem that needed addressing to begin with.” Having

 held that these findings had ample evidentiary support in addressing respondent-

 father’s appeal, we reach the same result with respect to respondent-mother,

 particularly given Dr. Bennett’s testimony that respondent-mother failed to

 comprehend that the family faced significant difficulties that needed to be addressed.

¶ 52 Finally, respondent-mother challenges the finding of fact contained in all four

 termination orders to the effect that her caregiving skills and efforts had been

 insufficient. As we have already discussed in our consideration of the similar

 challenge that respondent-father has directed to these findings of fact, the record,

 including, but not limited to, the testimony of Dr. Bennett, provides ample support

 for these findings as well.

¶ 53 The record reflects that respondent-mother left Ellie in a hot car in 2014. A

 subsequent investigation revealed the existence of problems relating to the

 cleanliness of and level of sanitation in the family home. However, according to Dr.
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 Bennett, respondent-mother did not acknowledge the existence of the problems that

 were pointed out to her on that occasion and failed to learn anything from the

 remedial services that were offered to her at that time. The condition of the family

 home continued to be very poor in 2018, as was reflected by the existence of a roach

 infestation and a collection of unaddressed dirty diapers. Even so, respondent-

 mother continued to fail to recognize the existence of these problems and felt, instead,

 that DSS was unfairly interfering in her life. According to Dr. Bennett, respondent-

 mother had the same parenting deficiencies in 2018 that she had had in 2014, having

 learned nothing from her prior experience. In addition, respondent-mother failed to

 take care of herself, suffered from untreated depression, was easily taken advantage

 of, allowed a sex offender to live in her home, and failed to understand child

 development or how to create an appropriate home environment for the children.

¶ 54 Finally, a social worker described respondent-mother’s failure to satisfy the

 requirements of her case plan with respect to issues relating to hygiene, parenting

 skills, and the need for regular communication with DSS and the deficient parenting

 skills that respondent-mother exhibited during visitation sessions with the children,

 during which she demonstrated an inability to care for all four children even when

 respondent-father was present. The social worker further testified that she had not

 seen any desire on the part of respondent-mother to learn improved parenting skills,

 with Dr. Bennett having testified that it was unlikely that respondent-mother and
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 respondent-father could develop the ability to parent the children if the children were

 returned to their care. As a result, these findings have ample evidentiary support as

 well.

¶ 55 As was the case with respect to respondent-father, respondent-mother

 acknowledges that the children had previously been found to be neglected juveniles.

 Instead, she argues that the trial court erred by concluding that the children were

 likely to experience a repetition of neglect in the event that they were returned to her

 care. As we have already explained in connection with respondent-father’s appeal,

 however, the trial court’s findings fully support its determination that the neglect

 that the children had experienced would likely be repeated in the event that the

 children were returned to respondent-mother’s care. In its termination orders, the

 trial court found that (1) the children were previously adjudicated as neglected

 juveniles with the consent of respondent-mother and respondent-father; (2) the

 juveniles had significant needs; (3) respondent-mother, like respondent-father,

 showed “a pattern of neglect and a failure to understand the need to change diapers,

 keep the home and the juvenile[s] clean, and keep themselves clean”; (4) respondent-

 mother did not feel that the family had any problems that needed to be addressed; (5)

 respondent-mother did not accept “that there was a problem that needed addressing

 to begin with”; (6) respondent-mother did not understand that there had been

 problems that needed addressing in 2014 and that, “by the time the 2018
 IN RE A.E., J.V., E.V., A.V.

 2021-NCSC-130

 Opinion of the Court

 psychological evaluation occurred[,] she still did not seem to understand that any

 problem needed addressing”; and (7) respondent-mother lacked sufficient caregiving

 skills. As a result, we hold that the trial court did not err in determining that

 respondent-mother’s parental rights in all four children were subject to termination

 on the basis of neglect pursuant to N.C.G.S. § 7B-1111(a)(1).

 III. Conclusion

¶ 56 Thus, for the reasons set forth above, we hold that the trial court did not err

 by determining that the parental rights of respondent-mother and respondent-father

 in Ellie, Jake, Evette, and Alana were subject to termination on the basis of neglect

 pursuant to N.C.G.S. § 7B-1111(a)(1). In view of the fact that the existence of a single

 ground for termination suffices to support the termination of a parent’s parental

 rights in a child, see In re A.R.A., 373 N.C. 190, 194 (2019), we need not address the

 challenges that have been advanced by respondent-mother and respondent-father to

 the other grounds for termination that the trial court found to exist in this case.

 Finally, since neither respondent-mother nor respondent-father has advanced any

 challenge to the trial court’s dispositional decision before this Court, we affirm the

 trial court’s termination orders.

 AFFIRMED.